UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                                                    Chapter 13

            JUDE JACQUES,                                Case No. 08-42279-ess

                        Debtor.
---------------------------------------------------------x
JUDE JACQUES,

                        Plaintiff,                       Adv. Pro. No. 09-1018-ess

            -against-

U.S. BANK N.A. in its capacity as Trustee for
the Registered Holders of the MASTR Asset
Backed Securities Series 2005-NC2 and
OCWEN LOAN SERVICING,

                        Defendants.
---------------------------------------------------------x

## MEMORANDUM DECISION ON
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

*Appearances:*

Joshua N. Bleichman, Esq.                    Saul O. Leopold, Esq.
268 Route 59                                 Peter T. Roach & Associates, P.C.
Spring Valley, NY 10977                      125 Michael Drive, Suite 105
*Attorney for the Plaintiff*                 Syosset, NY 11791
                                             *Attorneys for the Defendants*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding was commenced by the filing of a complaint by Jude Jacques, the debtor in this Chapter 13 case (the "Plaintiff"), against defendants U.S. Bank N.A. in its capacity as Trustee for the Registered Holders of the MASTR Asset Backed Securities Series 2005-NC2 ("U.S. Bank") and Ocwen Loan Servicing ("Ocwen") (the "Defendants"). The Plaintiff alleges that the Defendants filed an untimely and wrongful proof of claim, and that the filing of the proof of claim violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617 ("RESPA") and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692(p) ("FDCPA"), and was negligent and caused emotional distress. The Plaintiff seeks actual, statutory, and punitive damages, and his legal fees and expenses, and also asks that his debt to the Defendants be canceled, released, and discharged.

Before the Court is the Defendants' motion to dismiss all of the claims asserted in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

The Motion to Dismiss implicates the pleading standards announced by the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and raises the question of whether claims under two broad remedial statutes, RESPA and the FDCPA, may be asserted by a debtor in the context of a bankruptcy case. Some courts find that these statutes may "coexist peaceably," while others conclude that the Bankruptcy Code precludes some claims that arise under these statutes. The Motion to Dismiss also raises the question of whether the Plaintiff states a claim upon which relief can be granted.

The Court concludes that the second question should be answered before the first – that is, the Court should determine whether the Plaintiff states a claim for relief under RESPA or the

FDCPA before it can determine whether the Bankruptcy Code precludes the claim. If the alleged claim is inadequate on its face, then it is not necessary to address the question of whether preclusion should apply.

Here, the Plaintiff does not allege facts sufficient to state claims under theories of RESPA, the FDCPA, negligence, or infliction of emotional distress. As a result, it is not necessary to reach the question of whether any claim is precluded by the Bankruptcy Code. For these reasons, the Motion to Dismiss is granted.

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A).

## Procedural History

On January 23, 2009, the Plaintiff commenced this Adversary Proceeding by filing the Complaint. Docket No. 1.

On March 2, 2009, the Defendants filed the Motion to Dismiss, a Memorandum of Law in Support of Defendants' Motion to Dismiss (the "Defts' Mem."), and the Affirmation of Saul O. Leopold in Support of Defendants' Motion to Dismiss (the "Leopold Affirm."). Docket No. 3. The Defendants argue that the Complaint should be dismissed because the Plaintiff's RESPA and FDCPA claims are preempted by the Bankruptcy Code, and separately, that the Plaintiff does not adequately allege the elements of any of his claims.

On March 27, 2009, the Plaintiff filed the affirmation of Joshua N. Bleichman in Opposition to Motion to Dismiss (the "Bleichman Affirm.") and a Memorandum of Law with Points and Authorities in Opposition to Motion to Dismiss (the "Pltf's Mem."). Docket No. 6.

On April 1, 2009, the Defendants filed a Memorandum of Law in Support of Defendants' Reply to Opposition to Motion to Dismiss (the "Defts' Reply").  Docket No. 7.  On April 29, 2009, the Plaintiff filed a supplement to his Opposition to Motion to Dismiss (the "Pltf's Supp.").  Docket No. 8.  A hearing on the Motion to Dismiss was held on May 14, 2009, at which counsel for the Plaintiff and counsel for the Defendants appeared and were heard and the matter was submitted for decision.

### Background

On April 17, 2008, the Plaintiff filed a petition for relief under Chapter 13 of the Bankruptcy Code.  Case No. 08-42279, Docket No. 1.  The Debtor's Schedule A–Real Property lists his fee simple interest in 969 East 103rd Street, Brooklyn, New York (the "Premises"), with a value of $450,000 and secured claims of $505,215.  *Id*.  The Debtor's Schedule D–Creditors Holding Secured Claims, lists Ocwen as the holder of a secured claim in the amount of $366,680, secured by the Premises.  *Id.*  The Plaintiff also filed a Chapter 13 plan.  Case No. 08-42279, Docket No. 4.  The Chapter 13 plan requires the Trustee to make disbursements to, among others, an unidentified "Mortgage holder" for unspecified "pre-petition arrears . . . over the life of the plan."  *Id*.

On April 20, 2008, the Bankruptcy Court served a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines (the "Bankruptcy Court Notice") upon the Plaintiff's creditors, including Ocwen.  Case No. 08-42279, Docket No. 8.  The Bankruptcy Court Notice provides notice of the dates scheduled for the Section 341 meeting of creditors, the hearing on confirmation of the Chapter 13 plan, and the deadlines to file a proof of claim, file a complaint to determine dischargeability of certain debts, and object to exemptions.  Case No. 08-42279,

Docket No. 6. The Bankruptcy Court Notice also provides that for all creditors, other than governmental units, the deadline to file a proof of claim was August 12, 2008. *Id.*

<u>The Proof of Claim</u>

On May 1, 2008, Ocwen filed a secured proof of claim relating to its interest in the Premises (the "Proof of Claim"). Case No. 08-42279, Claim No. 2-1; Leopold Affirm. Exh. 3 (Proof of Claim). The Proof of Claim states that the total amount of Ocwen's secured claim is $374,718.05, and the amount of arrearage and other charges as of the petition date is $8,147.35. The Proof of Claim includes an itemization of the arrearage amount which lists "Monthly Payments" of $7,331.40,[1] "Late Charges" of $293.28, "Escrow Advances" of $319.94, "Fees, Costs & Property Preservation Expenses" of $129.13,[2] "POC Fee" of $150.00, and "Pre-Pet Suspense" credit of $76.40. It also includes a schedule of "Payoff Information" which identifies "Unpaid Principal Balance" of $366,570.70, "Interest From: 01/01/2008 to 04/30/2008" of $7,331.40, "Late Charges" of $293.28, "Escrow Advances" of $319.94, "Fees, Costs & Property Preservation Expenses" of $129.13, "POC Fee" of $150.00, "Pre-Pet Suspense" credit of $76.40, "Payoff as of: 04/17/2008" of $374,718.05, and "Per Diem Amount" of $61.10. Case No. 08-42279, Claim No. 2-1; Leopold Affirm. Exh. 3 (Proof of Claim - Schedule B).

The Proof of Claim includes a copy of a mortgage signed by the Plaintiff on July 26,

---

[1] Exhibit A to the Proof of Claim includes a "P&I Schedule" showing past-due prepetition payments of $1,832.85 for January, February, March, and April 2008, at six percent interest. Case No. 08-42279, Claim No. 2-1; Leopold Affirm. Exh. 3 (Proof of Claim).

[2] Exhibit C to the Proof of Claim is an itemization of the "Pre-petition Fee[s], Costs & Property Preservation Expenses" listing certified mail costs, a property inspection fee, and a property valuation fee. Case No. 08-42279, Claim No. 2-1; Leopold Affirm. Exh. 3 (Proof of Claim).

2005, which names First Rate Capital Corp. as "Lender" and Mortgage Electronic Registration Systems, Inc. ("MERS") as "a nominee for Lender and Lender's successors and assigns." Case No. 08-42279, Claim No. 2-1. Ocwen also attaches copies of a Note for $91,670, and an Interest Only Adjustable Rate Note for $366,680, each signed by the Plaintiff on July 26, 2005, and each naming First Rate Capital Corp. as the Lender. *Id.*

The Proof of Claim does not include documents showing an assignment of the mortgage from First Rate Capital Corp. or MERS to U.S. Bank. *Id.* Ocwen states that "[t]he beneficial interest under the mortgage was subsequently assigned to U.S. Bank N.A. in its capacity as Trustee for the Registered Holders of the MASTR Asset Backed Securities Series 2005-NC2," and that "Ocwen is the loan servicer for U.S. Bank N.A. as Trustee." Defts' Mem. at 2.

The Plaintiff has not objected to the Proof of Claim in the bankruptcy case.

The Complaint

The Plaintiff alleges that "[o]n or about July 26, 2005, [he] borrowed the sum of $366,680.00 from First Rate Capital Corp." Complaint ¶ 13. He states that his Chapter 13 plan "included a debt to U.S. Bank N.A., which was scheduled as a debt secured by a mortgage on the residential real estate [of the Plaintiff] with an estimated value of $370,000," and that his Chapter 13 plan "provided for the cure of the pre-petition arrears to U.S. Bank N.A." Complaint ¶ 15.

As to the Proof of Claim, the Plaintiff alleges:

The Defendant filed a sworn proof of claim . . . dated April 17, 2008 stating mortgage arrears in the amount of $8,147.35 and the total claim amounting to $374,718.05.

The proof of claim alleges $7,331.40 in Interest owed from 1/01/08-4/30/08 however, the amount is unsubstantiated and . . . unearned.

The proof of claim alleges $129.13 in Fees, Costs & Property Preservation Expenses, but fails to specify who the payee was.

The proof of claim alleges $319.94 in escrow advances, but fails to specify who the payee was.

. . .

The amounts [described above] are what are known by the consumer bar as "junk fees".

The plaintiff[] believe[s] that [he] is being charged unauthorized late fees, that [his] payments are being misapplied and that the mortgage account is not being properly credited for payments of interest, principal, and escrow charges.

Complaint ¶¶ 18-21, 23-24.

The Complaint sets forth four claims for relief.[3]  The Plaintiff's first claim is for violation of RESPA (the "RESPA Claim").  The Plaintiff alleges that the Defendants violated RESPA by failing to credit him for payments made on the mortgage.  Complaint ¶¶ 25-27.

The Plaintiff's second claim is for violation of the FDCPA (the "FDCPA Claim").  The Plaintiff alleges that the Defendants violated the FDCPA by "misrepresenting the amount and legal status of the debt," filing a proof of claim that was "time barred," and "filing a proof of claim in an attempt to collect a time barred debt which was not authorized or permitted by law."

_____

[3]  In his Opposition to the Motion to Dismiss, the Plaintiff states that "[t]he three separate laws which [he] alleges were violated by the Defendants [are] 1) Real Estate Settlement Procedures Act (RESPA), 2) Fair Debt Collection Practices Act (FDCPA) and 3) Truth In Lending Act (TILA)."  Bleichman Affirm. ¶ 2.  A review of the Complaint shows that it does not include a claim under the Truth in Lending Act.  "It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ."  *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989).  *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("'[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *O'Brien v. Nat'l Prop. Analysts Partners,* 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (same).  Accordingly, the Court will not consider the Plaintiff's assertion that the Defendants violated TILA.

Complaint ¶¶ 29-31.  *See* Complaint ¶¶ 28-33.

The Plaintiff's third claim is for negligence (the "Negligence Claim").  The Plaintiff alleges that the Defendants "intentionally, willfully and maliciously and/or negligently" filed a time-barred proof of claim, and that as a result of "Defendants' acts and omissions," the Plaintiff suffered damages.  Complaint ¶¶ 34-37.

The Plaintiff's fourth claim is for infliction of emotional distress (the "Emotional Distress Claim").  The Plaintiff alleges that the Defendants "misrepresented to the Bankruptcy Court that the Plaintiffs owed a debt to Defendants, by filing a proof of claim despite the fact that the debt was not collectable."  Complaint ¶ 39.  The Plaintiff further alleges that "Defendants' actions were reckless and negligent and [that] Plaintiff[] . . . suffered emotional injury and emotional distress . . . ."  Complaint ¶ 40.

## Discussion

The Defendants seek the dismissal of the claims asserted in the Complaint on grounds that, as to the RESPA and FDCPA Claims, they are preempted by the Bankruptcy Code, and as to all of the claims, the Plaintiff does not state a claim upon which relief can be granted.

### *The Pleading Standard Under Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 7012(b)(6), states that a complaint must contain a claim upon which relief can be granted.  In reviewing a claim for sufficiency under Rule 12(b)(6), the court's task is "'to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616

F.2d 636, 639 (2d Cir. 1980)).  *See Global Network Commc'ns, Inc. v. City of New York*, 458

F.3d 150, 155 (2d Cir. 2006); *Green v. Toyota Motor Creditcorp*, 605 F. Supp. 2d 430, 433

(E.D.N.Y. 2009).  The court accepts as true the plaintiff's well-pleaded factual allegations and

"draw[s] all reasonable inferences in the plaintiff's favor to decide whether the plaintiff has pled

a plausible claim for relief."  *Spagnola v. Chubb Corp.*, 574 F.3d 64, 67 (2d Cir. 2009).  *See*

*Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009); *City of New York v. Beretta*, 524 F.3d 384, 392

(2d Cir. 2008), *cert. denied*, 129 S. Ct. 1579 (2009).  The court may consider the contents of any

"documents attached to the complaint as an exhibit or incorporated in it by reference, to matters

of which judicial notice may be taken, or to documents either in the plaintiffs' possession or of

which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*,

987 F.2d 142, 150 (2d Cir. 1993).

This standard requires a plaintiff to do more than speculate about circumstances that

might conceivably give rise to a claim for relief:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of action will not do.  Factual
> allegations must be enough to raise a right to relief above the speculative level, on
> the assumption that all the allegations in the complaint are true (even if doubtful
> in fact).

*Twombly*, 550 U.S. at 555 (citations omitted).

That is, a plaintiff must allege "enough facts to state a claim to relief that is plausible on

its face" for the claim to survive scrutiny under Rule 12(b)(6).  *Twombly*, 550 U.S. at 570.  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*,

129 S. Ct. at 1949.  As the Supreme Court explains:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
>
> . . .
>
> [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."  FED. RULE CIV. PROC. 8(a)(2).

*Iqbal*, 129 S. Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 556-57 (citations omitted)).  Thus, a claim may be sustained only if the plaintiff has "nudged [its] claims across the line from conceivable to plausible."  *Twombly,* 550 U.S. at 570.  *See Iqbal*, 129 S. Ct. at 1950-51.

In determining whether a claim should survive a motion to dismiss, a court must first identify each element of the cause of action.  *Iqbal*, 129 S. Ct. at 1947.  Next, the court must identify the allegations that are not entitled to "the assumption of truth" because they are legal conclusions, not factual allegations.  *Iqbal*, 129 S. Ct. at 1951.  Finally, the court must assess the factual allegations in the context of the elements of the claim to determine whether they "plausibly suggest an entitlement to relief."  *Id*.

*The Pleading Standard Under Rule 8(a)*

Federal Rule of Civil Procedure 8(a), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 7008(a), states that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  In *Twombly*, the Supreme Court explained that Rule 8(a) requires:

> a "showing," rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could

> satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 555 n.3.

Applying *Twombly*, the Supreme Court observed that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citations omitted). *See Sheehy v. Brown,* 2009 WL 1762856, at *1 (2d Cir. June 23, 2009).

### *Whether the Plaintiff States a Claim Under RESPA*

RESPA regulates the real estate settlement process and the servicing of "federally related mortgage loans." 12 U.S.C. § 2602(1). *See* 12 U.S.C. §§ 2601-2617. RESPA's purpose is to provide consumers "with greater and more timely information on the nature and costs of the settlement process" and to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a).

To state a claim under Section 2605 of RESPA, a plaintiff must allege that the defendant violated a statutory duty under this section, as well as actual pecuniary damages and proximate causation. *See Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 2009 WL 1748743, at *9 (N.D.N.Y. June 19, 2009).

RESPA Section 2605 addresses mortgage loan servicing and escrow account administration. It requires the disclosure of "whether the servicing of the loan may be assigned, sold, or transferred . . . while the loan is outstanding" (12 U.S.C. § 2605(a)), and notice by the transferor and transferee of "any assignment, sale, or transfer of the servicing of the loan to any other person" (12 U.S.C. § 2605(b), (c)). Section 2605 also provides that a "late fee" may not be imposed on the borrower during the "60-day period beginning on the effective date of the

transfer of the servicing of any . . . loan" if the borrower's payment is received by the transferor servicer before the due date.  12 U.S.C. § 2605(d).

In addition, RESPA Section 2605(e) provides that a servicer must provide a written response to a "qualified written request from the borrower . . . for information relating to the servicing of [the] loan" within 20 days, "unless the action requested [by the borrower] is taken within [that] period."  12 U.S.C. § 2605(e).  And RESPA Section 2605(g) provides that if the mortgage loan terms require the borrower to make payments to the servicer for deposit into an escrow account to assure payment of "taxes, insurance premiums, and other charges with respect to the property," then the servicer must make those payments "in a timely manner" as they come due.  12 U.S.C. § 2605(g).

RESPA defines a loan "servicer" as "the person responsible for servicing of a loan," and loan "servicing" as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(2), (3).

A "federally related mortgage loan" includes any loan that:

> (A)    is secured by a first or subordinate lien on residential real property . . . designed principally for the occupancy of from one to four families . . . and
>
> (B)(i)  is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government . . . .

12 U.S.C. § 2602(1).

The Defendants argue that the RESPA Claim is "preempted" by the Bankruptcy Code and should be dismissed as a matter of law. Leopold Affirm. ¶¶ 8-11; Defts' Mem. at 4-6; Defts' Reply at 8-11. Citing *In re Nosek*, 354 B.R. 331 (D. Mass. 2006), the Defendants argue that the Bankruptcy Code's remedial scheme concerning the filing of proofs of claim conflicts with that of RESPA, because "both the remedial procedures in RESPA and the Motion to Determine Amount of Liens in the bankruptcy proceeding sought to achieve the same effect – the resolution of disputed claims – but through different remedial vehicles." *In re Nosek*, 354 B.R. at 339. *See* Defts' Reply at 9. Thus, the Defendants argue that the Bankruptcy Code "provides the exclusive remedy for resolving a dispute over a creditor's claim." Defts' Reply at 9.

The Plaintiff responds that the RESPA Claim is not barred by the Bankruptcy Code because *In re Nosek* is not controlling in this Circuit and has been rejected by at least one bankruptcy court, which recognized a division in authority among the circuits. Pltf's Mem. at 5-7. The Plaintiff also argues that at least one Circuit has found that "RESPA and Bankruptcy laws are independently actionable." Pltf's Mem. at 7 (citing *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348 (5th Cir. 2008)). Finally, the Plaintiff submitted an unpublished memorandum opinion issued by a bankruptcy court in the Central District of California, where three judges of that court, writing together, held that the district's form of addendum to a Chapter 13 plan, which requires secured lenders to make disclosures in addition to those required by RESPA, was not barred by RESPA because "the court does not believe that RESPA preempts the field." *In re Hannon*, No. 09-11330 (C.D. Cal. April 28, 2009). *See* Pltf's Supp. at 1.

At the outset, the Court notes that the question posed by the intersection of the Bankruptcy Code, on the one hand, and RESPA and the FDCPA, on the other, is not whether one

statute "preempts" the other, but which statute provides the framework for the Plaintiff's rights and remedies in the context of this bankruptcy case. As the Second Circuit has observed, "the preemption doctrine flows from the Constitution's Supremacy Clause, U.S. Const., Art. VI, cl. 2, which 'invalidates state laws that interfere with, or are contrary to, federal law.' . . . The doctrine is inapplicable to a potential conflict between two federal statutes." *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 86 (2d Cir. 2006) (quoting *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404, 414-15 (2d Cir. 2002)). And as the Seventh Circuit notes, "[w]hen two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other . . . ." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004).

The Supreme Court has stated that "absent a clearly expressed congressional intention, . . . repeals by implication are not favored." *Branch v. Smith*, 538 U.S. 254, 273 (2003) (citations and quotations omitted). As the Supreme Court observed, "[a]n implied repeal will only be found where provisions in two statutes are in 'irreconcilable conflict,' or where the latter Act covers the whole subject of the earlier one and 'is clearly intended as a substitute.'" *Branch*, 538 U.S. at 273 (quoting *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936)).

The Second Circuit has not addressed the issue of whether claims under RESPA are precluded by the Bankruptcy Code. And courts that have addressed this issue are divided.

In *Ameriquest Mortgage Co. v. Nosek*, 354 B.R. 331 (D. Mass. 2006), the debtor brought a motion to determine the amount of certain liens and an action under, among other statutes, RESPA. *Nosek*, 354 B.R. at 333. Both were based upon the lender's use of suspense or escrow accounts and its alleged inability to account for postpetition payments. *Id.*

The district court considered whether the Bankruptcy Code's claims allowance

procedures trump RESPA's procedures, including the requirement of a qualified written request.

354 B.R. at 338-39.  The court found that the remedial procedures under the Bankruptcy Code

and those under RESPA were inconsistent.  The court observed:

> Under RESPA, the servicer of the loan must respond to a qualified demand letter from the borrower within 20 days.  This [RESPA] section has no explicit exception for bankruptcy proceedings.  Under the Code and under the bankruptcy rules, however, a different process exists to determine the propriety of claims and to resolve disputes.  Section 502 of the Code allows for a proof of claim to be determined true, absent objection by the opposing party.  If an objection is registered, the Code entrusts the Bankruptcy Court with the role of determining the proper amount of the claim.  In addition, [Bankruptcy Rule] 3007 provides for objections to claims in a manner similar to RESPA.  Under Bankruptcy Rule 3007, an objection to a claim must be in writing and filed at least 30 days prior to the hearing.

*Nosek*, 354 B.R. at 339 (citations omitted).

The court noted that RESPA and the Bankruptcy Code provide conflicting procedures

and remedies, and that each had been invoked by the debtor:

> Nosek sent . . . a qualified demand letter under RESPA on July 23, 2004.  Under RESPA, and outside of the bankruptcy proceeding context, Ameriquest would have had 20 days to reply to this demand letter.  Nosek also filed with the Bankruptcy Court a Motion to Determine Amount of Liens on August 11, 2004.  This motion was filed before the RESPA safe harbor time-frame had expired and sought to have the Bankruptcy Court determine the amount owed.  The Bankruptcy Court proceedings that followed sought to address the disputed claims, and the subsequent adversarial action raised many of the same claims asserted in the motion.  In this case, both the remedial procedures in RESPA and the Motion to Determine Amount of Liens in the bankruptcy proceeding sought to achieve the same effect – the resolution of disputed claims – but through different remedial vehicles.

*Nosek*, 354 B.R. at 339 (citations omitted).  The court concluded that "the purposes of the Code

in determining the disputed claims within the structure of the Bankruptcy Court conflict with

RESPA's requirements."  *Id.*

Other courts have found that a debtor may assert a RESPA claim in the context of a

bankruptcy case, at least in some particular circumstances where the purposes and procedures of

RESPA and the Bankruptcy Code complement each other, or at a minimum, do not conflict.  For

example, in *Payne v. Mortgage Elec. Registration Sys., Inc. (In re Payne)*, 387 B.R. 614 (Bankr.

D. Kan. 2008), the court found that RESPA and the Bankruptcy Code provide alternative

methods of requesting information, and observed that "[e]ach manner of requesting information

is a viable option and subject to enforcement if ignored.  Concurrent means of accomplishing the

same task are not necessarily incompatible and may proceed on their parallel paths."  *Payne*, 387

B.R. at 634.

And in *Holland v. EMC Mortgage Corp. (In re Holland)*, 374 B.R. 409 (Bankr. D. Mass.

2007), the court declined to follow *Nosek*, and held:

> It is a cardinal rule of statutory construction that when two federal statutes
> address the same subject, courts must try to give effect to both.  *United States v.
> Borden Co.*, 308 U.S. 188, 198, 60 S. Ct. 182, 84 L. Ed. 181 (1939).  This Court
> finds no inherent conflict between the Bankruptcy Code and the provisions of
> RESPA which would preclude a debtor from pursuing RESPA claims during a
> pending bankruptcy case.  In fact, a debtor's interest in a cause of action for
> violations of RESPA or other federal consumer protection statutes which occurred
> prepetition, and, in the case of a Chapter 13 debtor, postpetition, are property of
> the estate.  *See* 11 U.S.C. §§ 541(a)(1), 1306(a)(1).

*Holland*, 374 B.R. at 443.  *See Laskowski v. Ameriquest Mortgage Co. (In re Laskowski)*, 384

B.R. 518, 528 (Bankr. N.D. Ind. 2008) (finding that there is "no irreconcilable conflict between

the Bankruptcy Code and RESPA; indeed, . . . their remedial systems can and do coexist," so

that debtor may assert RESPA claim where mortgage servicing company did not respond to post-

petition qualified written request by trustee and did not account for mortgage payments); *Figard*

*v. PHH Mortgage Corp. (In re Figard)*, 382 B.R. 695, 711-12 (Bankr. W.D. Pa. 2008) (RESPA

claim may proceed where lender did not respond to debtors' attorney's post-petition qualified

written request because "the RESPA statute and the Bankruptcy Code provisions are capable of coexisting harmoniously with one another").

The Plaintiff's allegations in support of his RESPA Claim are:

The Defendant has failed to comply with Section 2605 of Title 12 of the United States Code and failed to credit Plaintiff for payments made on the mortgage.

Pursuant to Section 2605(f) of Title 12 of the United States Code and Section 3500.21(f) of Reg. X, the Plaintiff[] may recover of the Defendant actual damages, costs and reasonable attorney fees for each failure of the Defendant to comply with any part of Section 2605 of Title 12 of the United States Code.

Complaint ¶¶ 26-27.

Here, unlike those cases where the plaintiff alleges that there was a failure to respond to a qualified written request, the Complaint does not identify which requirement of RESPA has been violated, or what conduct by the Defendants gave rise to a violation of Section 2605. The Plaintiff does not allege the that the Defendants failed to respond to a qualified written request, or that they failed to disclose the assignment or sale of the mortgage. *See* 12 U.S.C. § 2605(a)-(c), (e). He also does not allege that payments were misapplied during a transfer period, or that tax and insurance payments were not made in a timely manner from the escrow account. *See* 12 U.S.C. § 2605(d), (g).

Rather, the Plaintiff alleges that the Defendants violated RESPA by failing to credit him for payments that he made on the mortgage. Complaint ¶ 26. The Plaintiff also alleges that he "believe[s] that [he is] being charged unauthorized late fees, that [his] payments are being misapplied and that the mortgage account is not being properly credited for payments of interest, principal, and escrow charges." Complaint ¶ 24. *See* Complaint ¶¶ 18-21. Without more, these allegations are simply not sufficient to state a claim under RESPA Section 2605. *See* 12 U.S.C.

§ 2605.

Accordingly, this Court declines the invitation to decide whether the Bankruptcy Code precludes the Plaintiff's RESPA Claim. Instead, the Court finds that the Plaintiff does not allege facts sufficient to state a plausible claim under RESPA Section 2605. *See Twombly*, 550 U.S. at 570. As noted above, he does not allege facts sufficient to show a violation of one of the statutory duties imposed by RESPA, including to respond to a qualified written request, or to disclose the assignment or sale of the mortgage, or not to misapply payments during a transfer period, or not to make tax or insurance payments in a timely manner from an escrow account. *See* 12 U.S.C. § 2605(a)-(e), (g). Nor does he allege facts sufficient to show proximate causation or actual pecuniary damages. *See Gorham-DiMaggio*, 2009 WL 1748743, at *9.

For these reasons, and based on the entire record, the Court finds that the Plaintiff does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Accordingly, the Motion to Dismiss the RESPA Claim is granted.

<u>*Whether the Plaintiff States a Claim Under the FDCPA*</u>

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The FDCPA prohibits a debt collector from engaging in harassing, oppressive, or abusive conduct or using unfair or unconscionable means to collect a debt. 15 U.S.C. §§ 1692d, 1692f. *See Scott v. Wells Fargo Home Mortgage, Inc*., 326 F. Supp. 2d 709, 717 (E.D. Va. 2003). It also prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

In order to state a claim under the FDCPA, the Plaintiff must allege that the Defendants

took actions to collect a consumer debt, the Defendants are "debt collectors," and the Defendants engaged in conduct prohibited by the FDCPA. *See Som v. Daniels Law Offices, P.C.*, 573 F. Supp. 2d 349, 356 (D. Mass. 2008) (citing *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008)) (reciting elements); *Pescatrice v. Robert J. Orovitz, P.A.*, 539 F. Supp. 2d 1375, 1378 (S.D. Fla. 2008)*; In re Creditrust Corp.*, 283 B.R. 826, 830 (Bankr. D. Md. 2002).

Under the FDCPA, a consumer "debt" is "any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6). It also excepts from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ." 15 U.S.C. § 1692a(6)(F)(iii). That is, as courts have found, the FDCPA does not apply to mortgage servicing companies unless "the mortgage at issue was already in default at the time when servicing began." *See, e.g.*, *Dawson v. Dovenmuehle Mortgage, Inc.*, 2002 WL 501499, at *5 (E.D. Pa. Apr. 3, 2002).

FDCPA Section 1692e(2) and (5) prohibit the making of a false representation of "the character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt," and also prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

15 U.S.C. § 1692e(2), (5).

FDCPA Section 1962f(1) provides that it is a prohibited unfair practice to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

> The Plaintiff's allegations in support of his FDCPA Claim are:
>
> Defendants violated 15 U.S.C. 1692e(2) by misrepresenting the amount and legal status of the debt, stating that Plaintiff owed money with total disregard to the fact that the debt had already been paid.
>
> Defendants violated 15 U.S.C. 1692e(5) by filing a proof of claim that was time barred.
>
> Defendants violated 15 U.S.C. 1692f(1) by filing a proof of claim in an attempt to collect a time barred debt which was not authorized or permitted by law.
>
> As a direct and proximate result of thereof, Plaintiff has been injured and may continue to suffer such injury in the future.
>
> As a direct and proximate result of the above violations of the FDCPA, Defendants are liable to the Plaintiff[] for declaratory judgment that Defendant's conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, and costs and attorney's fees.

Complaint ¶¶ 29-33.

The Defendants argue that the FDCPA Claim is "preempted" by the Bankruptcy Code and should be dismissed as a matter of law. Leopold Affirm. ¶¶ 8-11; Defts' Mem. at 4-6, Defts' Reply at 2-8. Citing *Ameriquest Mortgage Co. v. Nosek*, 354 B.R. 331 (D. Mass. 2006) and *B-Real, LLC v. Chaussee*, 399 B.R. 225 (B.A.P. 9th Cir. 2008), the Defendants argue:

> Although the Second Circuit has not ruled [on the preemption issue] . . . the First and Ninth Circuit courts clearly hold that the Bankruptcy Code provides the exclusive remedy for a wrongful proof of claim and the debtor may not seek relief under the federal [FDCPA] and [RESPA] for disputed claims filed in the

underlying bankruptcy.

Defts' Reply at 2.

The Defendants also argue that "[t]he Bankruptcy [Code] sets forth a comprehensive scheme for resolving disputes over debts" that is embodied in the claims objection process, and that this procedure contrasts with the protections and procedures established by the FDCPA.

Defts' Reply at 6-7.  They state:

> [The] Plaintiff cites no authority which directly addresses . . . whether a disputed proof of claim can constitute a violation of the FDCPA.  The proper method to challenge a disputed proof of claim is [to file] an objection, give notice, and conduct a hearing pursuant to the Bankruptcy Code.

Defts' Reply at 8.

The Plaintiff argues that the Bankruptcy Code does not bar him from asserting his rights under the FDCPA in his bankruptcy case.  Pltf's Mem. at 2-5.  He notes that the FDCPA is a broad and remedial statute, adopted by Congress to address the "'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.'"  Pltf's Mem. at 2 (quoting 15 U.S.C. § 1692(a)).  And while the Plaintiff cites authority indicating that courts disagree on this question, he urges that the more persuasive cases, including the Seventh Circuit's decision in *Randolph*, conclude that Congress did not intend to prohibit FDCPA actions in bankruptcy cases.  Pltf's Mem. at 3-6.

As noted above, the question posed by the intersection of the Bankruptcy Code and another federal statute such as the FDCPA is not whether one statute "preempts" the other, but which statute provides the framework for the Plaintiff's rights and remedies in the context of this bankruptcy case.  *See* p. 13, *supra*.  And as the Supreme Court has stated, "absent a clearly expressed congressional intention, . . . repeals by implication are not favored."  *Branch*, 538 U.S.

at 273 (citations and quotations omitted).

The Plaintiff alleges that the Defendants violated FDCPA Sections 1692e(2), 1692e(5), and 1692f(1) by "misrepresenting the amount and legal status of the debt," "filing a proof of claim that was time barred," and "filing a proof of claim in an attempt to collect a time barred debt which was not authorized or permitted by law." Complaint ¶¶ 29-31. That is, the facts alleged by the Plaintiff in support of his FDCPA Claim arise from the filing of the Proof of Claim and its contents.

Several courts have considered whether a claim for a violation of the FDCPA may be asserted in the context of a bankruptcy case. Some of these cases arise, as here, in the context of disputed proofs of claim. Others arise in the context of allegations of improper acts or wrongful conduct after the bankruptcy case is commenced. While the Second Circuit has not addressed whether the Bankruptcy Code precludes a FDCPA claim, two other Circuits have considered the question and reached different conclusions.

The Seventh Circuit considered this question in *Randolph,* where the plaintiff alleged that a collection agency violated the FDCPA by sending her collection letters while her Chapter 13 case was pending. *Randolph*, 368 F.3d at 728. The court considered whether the Bankruptcy Code precluded the FDCPA claim, as both statutes address the same subject, and found that "the statutes overlap, each with coverage that the other lacks." *Randolph*, 368 F.3d at 731. But the court also noted that "the FDCPA sets a lower standard of liability and provides lower damages," and that "[o]verlapping statutes do not repeal one another by implication; as long as people can comply with both, then courts can enforce both." *Id.* The court concluded that Bankruptcy Code Section 362, which "condemns only willful debt-collection attempts" that violate the automatic

stay, did not preclude application of the FDCPA, and that allowing the FDCPA claim "would not contradict any portion of the Bankruptcy Code." *Randolph*, 368 F.3d at 732.

The Ninth Circuit considered the relationship between the FDCPA and the Bankruptcy Code in *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502 (9th Cir. 2002). There, a Chapter 7 debtor attempted a "ride through" on her mortgage loan – that is, she was current on her payments and continued to make regular monthly mortgage payments. *Walls*, 276 F.3d at 505. After the debtor's bankruptcy case concluded, she fell behind on her mortgage payments and the lender brought a foreclosure action. *Id.* The debtor commenced a class action alleging, among other things, that the lender violated the FDCPA in attempting to collect a debt after it had been discharged in bankruptcy. In particular, she alleged that the lender's efforts to collect a discharged debt were "prohibited by [the bankruptcy discharge injunction] and [were] an unfair and unconscionable means of collecting debt under the FDCPA." *Walls*, 276 F.3d at 505.

The court found that the FDCPA claim was based on an alleged violation of the Bankruptcy Code discharge injunction, for which the Bankruptcy Code provides a remedy of contempt. *Walls*, 276 F.3d at 510. The court observed:

> To permit a simultaneous claim under the FDCPA would allow through the back door what [the debtor] cannot accomplish through the front door – a private right of action. This would circumvent the remedial scheme of the Code under which Congress struck a balance between the interests of debtors and creditors by permitting (and limiting) debtors' remedies for violating the discharge injunction to contempt. "[A] mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code . . . demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike."

*Id.* (quoting *MSR Exploration*, *Ltd. v. Meridian Oil, Inc*., 74 F.3d 910, 914 (9th Cir. 1996)). The court concluded that the bankruptcy remedy of contempt for a violation of the discharge

injunction precluded a simultaneous FDCPA claim. *Walls*, 276 F.3d at 510-11. *Cf. Drnavich v. Cavalry Portfolio Serv., LLC*, 2005 WL 2406030, at *2 (D. Minn. Sept. 29, 2005) ("[T]he [*Walls*] court identified neither an irreconcilable conflict between the statutes nor a clear legislative intention that one replace the other.").

In *B-Real, LLC v. Chaussee*, 399 B.R. 225 (B.A.P. 9th Cir. 2008), the Ninth Circuit Bankruptcy Appellate Panel considered whether an FDCPA claim could arise from the filing of a proof of claim. There, the creditor filed two unsecured proofs of claim based upon credit card accounts. *Chaussee*, 399 B.R. at 228. The debtor brought an action under the FDCPA and state consumer protection law alleging that she did not owe the underlying debts and that they were barred by the statute of limitations. *Id.* The creditor moved to dismiss on grounds that neither the FDCPA nor state law applied to filing a proof of claim in a bankruptcy case. *Id.*

The court noted that *Walls* was controlling, and stated that "even if not so constrained, we would . . . conclude, as in *Walls*, that the Code precludes application of the FDCPA under our facts." *Chaussee*, 399 B.R. at 237. The court found that "the debt validation provisions required by FDCPA clearly conflict with the claims processing procedures contemplated by the Code and Rules." *Chaussee*, 399 B.R. at 238.

The court described the conflict between the statutes:

[A] proof of claim filed in a bankruptcy case constitutes prima facie evidence of its validity and is deemed allowed unless and until the debtor objects to it. If an objection is filed, the bankruptcy court resolves that objection after notice and a hearing.

In contrast, under FDCPA, a debt is presumed valid if the debtor does not dispute the debt within thirty days after receipt of an "initial communication." Even then, FDCPA provides that, if the consumer fails to dispute the validity of a debt, that failure may not be construed by any court as an admission of liability by the consumer.

Moreover, under the FDCPA, a "communication in the form of a formal pleading" shall not be treated as an initial communication. We question whether the filing of a proof of claim by a creditor constitutes an initial communication. If it is not an initial communication, then in order to comply with FDCPA, the debt collector must send another communication to the debtor containing the required statutory notice. However, sending such a notice to a debtor in a pending bankruptcy case has been held to violate the automatic stay. We are therefore puzzled as to how creditors can comply with both statutory schemes when the Code dictates they cease all collection actions, whereas FDCPA requires them to communicate with the debtor in connection with the collection of a debt.

*Chaussee*, 399 B.R. at 238-39 (citations omitted).

In a concurring opinion, one member of the panel also noted the different purposes of the FDCPA and the Bankruptcy Code:

The FDCPA's purpose is to govern the methods used to collect debts. The claims process, on the other hand, is a process in which the amount and validity of a debt is established for purposes of obtaining a distribution from a bankruptcy estate.

. . .

The statutory purpose of the FDCPA, as well as common sense, leads me to conclude that there is nothing "unfair" or "unconscionable" about filing a proof of claim in a bankruptcy case even if it could be construed as a debt collection activity. The FDCPA's purpose of protecting unsophisticated consumers from unscrupulous debt collectors is simply not implicated at all.

*Chaussee*, 399 B.R. at 244-45 (Jury, J., concurring).

In the Second Circuit, the district courts for the Eastern, Western, and Northern Districts of New York have found that the Bankruptcy Code precludes FDCPA claims based upon a violation of the automatic stay or discharge injunction. For example, in *Necci v. Universal Fidelity Corp.*, 297 B.R. 376 (E.D.N.Y. 2003), the court stated that it "agrees with the majority and concludes that the bankruptcy code precludes claims under the FDCPA when those claims are based upon violations of the bankruptcy stay." *Necci*, 297 B.R. at 381. The court noted that its conclusion was supported by the Supreme Court's analysis of a similar question in *Kokoszka*

*v. Belford*, 417 U.S. 642 (1974). *Necci*, 297 B.R. at 380. The court observed:

> In *Kokoszka*, the Supreme Court was called upon to make a decision between conflicting principals of the Consumer Credit Protection Act (the "CCPA"), the predecessor statute to the FDCPA, and bankruptcy law. There, the Supreme Court held that the garnishment limiting provisions of the CCPA could not be relied upon to upset the bankruptcy trustee's decision to treat an income tax refund as property of the estate. In support of its holding, the Supreme Court noted that while the CCPA sought to prevent consumers from entering bankruptcy, if bankruptcy did occur, the debtor's protections and remedies lied exclusively within the bankruptcy act, (the predecessor to the bankruptcy code).

*Id.  See Burchalewski v. Wolpoff & Abramson, LLP*, 2008 WL 4238933, at *2 (W.D.N.Y. Sept. 8, 2008) (agreeing with *Walls* and concluding that "Plaintiff does not have an independent cause of action under the FDCPA for the violation of a stay under the Bankruptcy Code"); *Degrosiellier v. Solomon & Solomon, P.C.*, 2001 WL 1217181, at *5 (N.D.N.Y. Sept. 27, 2001) (plaintiff is precluded from seeking damages under the FDCPA where the claim is "premised on conduct otherwise remedied or governed by provisions of the Bankruptcy Code"); *Diamante v. Solomon & Solomon, P.C.*, 2001 WL 1217226, at *6 (N.D.N.Y. Sept. 18, 2001) ("To permit Plaintiff to circumvent [the discharge injunction] and its remedy by bringing a claim under the FDCPA . . . would directly contravene the Bankruptcy Code's remedial scheme.").

Courts addressing the question of whether the filing of a proof of claim can give rise to an FDCPA claim have similarly concluded that the Bankruptcy Code precludes the assertion of a claim under the FDCPA. For example, in *Middlebrooks v. Interstate Credit Control, Inc.*, 391 B.R. 434 (D. Minn. 2008), the court observed that "[t]he FDCPA and Bankruptcy Code overlap but generally coexist peaceably" and held that "the FDCPA provides no remedy to [the debtor] for [the creditor's] allegedly wrongful proof of claim." *Middlebrooks*, 391 B.R. at 437.

Other courts are in accord. *See, e.g.*, *Baldwin v. McCalla*, 1999 WL 284788, at *5 (N.D.

Ill. Apr. 26, 1999) (debtor may challenge a proof of claim only by using Bankruptcy Code remedies); *Simpson v. PRA Receivables Mgt., LLC (In re Simpson, LLC),* 2008 WL 4216317, at *3 (Bankr. N.D. Ala. Aug. 29, 2008) (FDCPA claim "cannot be based on the filing of a proof of claim, regardless of the ultimate validity of the underlying claim."); *Williams v. Asset Acceptance, LLC (In re Williams)*, 392 B.R. 882, 886 (Bankr. M.D. Fla. 2008) (debtor's remedy for creditor's filing of time-barred claim was under the Bankruptcy Code, not the FDCPA); *Gilliland v. Capital One Bank (In re Gilliland)*, 386 B.R. 622, 623 (Bankr. N.D. Miss. 2008) (FDCPA claim cannot be premised on bankruptcy proof of claim); *Rice-Etherly v. Bank One (In re Rice-Etherly),* 336 B.R. 308, 312-13 (Bankr. E.D. Mich. 2006) (FDCPA does not apply to a bankruptcy proof of claim); *Cooper v. Litton Loan Servicing (In re Cooper)*, 253 B.R. 286, 291 (Bankr. N.D. Fla. 2000) ("[T]he filing of a proof of claim in a bankruptcy proceeding does not trigger the FDCPA, and fails to state a cause of action under that Act.").[4]

Courts also recognize that permitting an FDCPA claim to supplant the Bankruptcy Code's claims objection procedures "'could potentially undermine the Bankruptcy Code's specific provisions of administration of the debtor's estate.'" *Middlebrooks*, 391 B.R. at 437 (quoting *Molloy v. Primus Auto. Fin. Servs.*, 247 B.R. 804, 820 (C.D. Cal. 2000)). For example, the assertion of an FDCPA claim based upon a bankruptcy proof of claim "'could discourage creditors from filing claims . . . and encourage debtors to ignore the procedural safeguards within the Bankruptcy Code, such as the right to object to proofs of claim and to seek sanctions against

---

[4]  The Bankruptcy Code also contains remedies to address a creditor's misconduct in filing an improper claim. As one court notes, "[w]hile [Bankruptcy Code] § 105(a) empowers bankruptcy courts to impose civil, but not criminal or punitive sanctions, if a purported creditor abuses the claims process, we are confident that § 105(a) provides an effective mechanism for addressing that misconduct." *Chaussee,* 399 B.R. at 241 (citations omitted).

creditors who violate provisions within the Bankruptcy Code, in favor of the FDCPA.'"

*Middlebrooks*, 391 B.R. at 437 (quoting *In re Rice-Etherly*, 336 B.R. at 312).

In addition, such actions could inject significant delay and uncertainly into the

bankruptcy claims administration process. As courts have noted:

> "To accept the proposition that the [FDCPA] created an alternative method to challenge a proof of claim in bankruptcy would open the floodgate for unnecessary and expensive litigation, replacing the simple procedure for dealing with an objection to the allowance of a claim. This cause of action would be totally contrary to the entire scheme established by Congress to deal with creditor and debtor relationships."

*B-Real, LLC v. Rogers*, 405 B.R. 428, 434 (M.D. La. 2009) (quoting *In re Williams*, 392 B.R. at

888).

Here, the Plaintiff's FDCPA claim, as alleged in the Complaint, arises from the

Defendants' filing of a proof of claim and the contents of that claim, and not from the kind of

postpetition wrongful conduct upon which courts have relied to find that an FDCPA claim may

be asserted in a bankruptcy case.[5] Each of the Plaintiff's particularized allegations relates to the

proof of claim, and each can be addressed by the claims adjudication process of the Bankruptcy

Code. Complaint ¶¶ 28-33.

But before the question of preclusion is determined, it is appropriate to consider whether

the Plaintiff alleges each of the elements of an FDCPA claim. To state a claim under the

FDCPA, the Plaintiff must allege that the Defendants took actions to collect a consumer debt,

that the Defendants are "debt collectors," and that the actions taken violate the FDCPA. *See*

---

[5] The Plaintiff alleges that the Proof of Claim is time-barred. Complaint ¶ 30. The last day to file claims in this bankruptcy case was August 12, 2008. *See* Bankruptcy Court Notice, Case No. 08-42279, Docket No. 8. The Proof of Claim was filed on May 1, 2008, well within the time period allowed for the filing of claims. *See* Case No. 08-42279, Claim No. 2-1.

*Som*, 573 F. Supp. 2d at 356.

Here, the Plaintiff alleges that the Proof of Claim is time-barred, that it "misrepresent[s] the amount and legal status of the debt," and that it is "an attempt to collect a time barred debt which [is] not authorized or permitted by law."  Complaint ¶¶ 28-33.  Unlike the plaintiff in *Randolph*, the Plaintiff does not allege facts sufficient to show that the Defendants have taken actions prohibited by the FDCPA to collect a debt outside the bankruptcy process while this bankruptcy case was pending.  *See Randolph*, 368 F.3d at 728-29 (debt collector sent collection letters to the debtor to collect discharged pre-petition debt).

The Plaintiff also does not allege facts sufficient to show that the Defendants' conduct in filing the Proof of Claim amounts to a violation of the FDCPA.  It simply is not wrongful conduct prohibited by the FDCPA to file a proof of claim as authorized by the Bankruptcy Code. *See* 11 U.S.C. § 501(a) ("A creditor . . . may file a proof of claim.").  The filing of a proof of claim is meant to assert a right to payment against a debtor's estate, so that the court can determine whether the claim is allowed under the Bankruptcy Code.  *See Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 449 (2007) (citing 11 U.S.C. §§ 101(5)(A), 502(a)).  It is not viewed as an effort to collect a debt from the debtor, who enjoys the protection of the automatic stay.  *See Campbell v. Countrywide Home Loans, Inc*., 545 F.3d 348, 355-56 (5th Cir. 2008) ("We find no precedents in which a court has held that asserting a right to payment in a [p]roof of [c]laim constitutes a violation of the automatic stay."); *Hurst v. U.S. Bank* (*In re Hurst*), 357 B.R. 782, 785 (Bankr. W.D. Ark. 2006) (even when incorrect, the filing of a proof of claim does not violate the automatic stay).  These allegations are insufficient to state a claim under the FDCPA.

Accordingly, here too, this Court declines the invitation to decide whether the Bankruptcy Code precludes the Plaintiff's FDCPA Claim. *See Twombly*, 550 U.S. at 570. Instead, the Court finds that the Plaintiff does not allege facts sufficient to state a plausible claim under the FDCPA, because he does not adequately allege the threshold element that the Defendants took actions to collect a consumer debt. Without this predicate, the Plaintiff may not state a claim for relief under the FDCPA.

For these reasons, and based on the entire record, the Court finds that the Plaintiff does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Accordingly, the Motion to Dismiss the FDCPA Claim is granted.

*Whether the Plaintiff States a Negligence Claim*

A claim for negligence under New York law requires "(i) the existence of a duty owed by defendant to plaintiff; (ii) breach of this duty; (iii) resultant injury to plaintiff; and, (iv) a causal relationship between defendant's conduct and plaintiff's injury." *Food Mgt. Group, LLC v. Rattet (In re Food Mgt. Group, LLC)*, 380 B.R. 677, 714 (Bankr. S.D.N.Y. 2008).

As the New York Court of Appeals has observed, "[t]he threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?" *Hamilton v. Beretta U.S.C. Corp.*, 96 N.Y.2d 222, 232, 727 N.Y.S.2d 7, 12 (N.Y. 2001). The plaintiff must allege "that a defendant owed not merely a general duty to society but a specific duty to him or her, for '[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.'" *Hamilton*, 96 N.Y.2d at 222 (quoting *Lauer v. City of New York*, 95 N.Y.2d 95, 100, 711 N.Y.S.2d 112, 115 (N.Y. 2000)). *See Stanford v. Kuwait Airways Corp.*, 89 F.3d 117, 123 (2d Cir. 1996) ("It is

elementary that to find a party liable in negligence there must have been a duty – a relationship between the two parties such that society imposes an obligation on one to protect the other from an unreasonable risk of foreseeable harm.").

And "a simple breach of contract cannot form the basis of a tort action unless a legal duty which is independent of the contract has been violated." *John's Insulation, Inc. v. Hartford Accident & Indem. Co. (In re John's Insulation, Inc.)*, 221 B.R. 683, 691 (Bankr. E.D.N.Y. 1998).

The Plaintiff's allegations in support of his Negligence Claim are:

Defendants intentionally, willfully and maliciously and/or negligently filed a proof of claim which was time barred.

Defendants intentionally, willfully and maliciously and/or negligently failed to review the file before filing the proof of claim.

As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered damages, past, present and future, including but not limited to mental anguish, anxiety, distress, humiliation, embarrassment and aggravation, together with costs and attorney fees incurred in obtaining relief from Defendants' wrongful acts and omissions.

Complaint ¶¶ 35-37.

The Defendants argue that the Plaintiff's Negligence Claim should be dismissed as a matter of law because he has not alleged adequately that they owe a duty to him. Defts' Mem. at 6-7. They note that it is "unclear from the allegations of the complaint, what duty Plaintiff asserts Defendants owe him," or what facts or legal authority would "support the imposition of a legal duty on a creditor in the context of a bankruptcy proceeding." Defts' Mem. at 7. *See* Leopold Affirm. ¶¶ 12-14. The Plaintiff does not respond to the Defendants' arguments directed to the Negligence Claim.

Here, the Plaintiff alleges that the Defendants filed a time-barred proof of claim and "failed to review the file before filing the proof of claim." Complaint ¶ 36. *See* Complaint ¶ 35. Accepting these allegations as true, and drawing all reasonable inferences in favor of the Plaintiff, he does not allege facts sufficient to show the existence of a duty or the breach of that duty. Nor does he allege that he suffered damages proximately caused by the breach. That is, the Plaintiff does not allege facts sufficient to "allow[] the court to draw the reasonable inference that the [Defendants are] liable for the misconduct alleged" under a negligence claim. *Iqbal*, 129 S. Ct. at 1949.

For these reasons, and based on the entire record, the Court finds that the Plaintiff does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, the Motion to Dismiss the Negligence Claim is granted.

*Whether the Plaintiff States an Emotional Distress Claim*

The Plaintiff's Emotional Distress Claim is described as a claim for "Infliction of Emotional Distress." Complaint ¶¶ 38-40. The Complaint does not indicate whether relief is sought under a theory of intentional or negligent infliction of emotional distress. The Plaintiff alleges:

> Defendants misrepresented to the Bankruptcy Court that the Plaintiff[] owed a debt to Defendants, by filing a proof of claim despite the fact that the debt was not collectable.
>
> Defendants' actions were reckless and negligent and as a direct and proximate result thereof, Plaintiff[] [has] suffered emotional injury and emotional distress and may continue to suffer such injury in the future.

Complaint ¶¶ 39-40.

The Plaintiff also alleges that the Defendants "intentionally, willfully and maliciously

and/or negligently filed a proof of claim which was time barred" and that the Defendants "intentionally, willfully and maliciously and/or negligently failed to review the file before filing the proof of claim."  Complaint ¶¶ 35-36.

Intentional Infliction of Emotional Distress  A claim for intentional infliction of emotional distress under New York law requires allegations of:  "'(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.'"  *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)).

The New York Court of Appeals has observed that the elements of a claim for intentional infliction of emotional distress are "'rigorous, and difficult to satisfy.'"  *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353 (N.Y. 1993) (quoting W. PROSSER & W.P. KEETON, TORTS § 12 at 60-61 (5th ed. 1971)).  This is because the conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'"  *Stuto*, 164 F.3d at 827 (quoting *Howell*, 81 N.Y.2d at 122).  *See Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir. 1985).

The Defendants argue that "[t]o the extent that the allegations in the Complaint are construed as a claim for intentional infliction of emotional distress, Plaintiff fails to plead sufficient facts to state such a claim."  Defts' Mem. at 8.  The Defendants also argue that "there can be no liability for emotional distress damages where the defendant does no more than assert legal rights in a permissible way."  *Id*.  The Plaintiff does not respond to the Defendants'

arguments directed to the Emotional Distress Claim.

Accepting the allegations of the Complaint as true, and drawing all reasonable inferences in favor of the Plaintiff, the Court finds that the Plaintiff does not allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto*, 164 F.3d at 827 (quoting *Howell*, 81 N.Y.2d at 122). Nor does the Plaintiff allege facts sufficient to show intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress, a causal connection between the conduct and the injury, or severe emotional distress. *See Conboy*, 241 F.3d at 258.

As a consequence, the Court finds that the Plaintiff does not state a claim for intentional infliction of emotional distress.

Negligent Infliction of Emotional Distress   "'Negligent infliction of emotional distress has its roots in the acknowledgment by the courts of the need to provide relief in those circumstances where traditional theories of recovery do not.'" *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 535 (S.D.N.Y. 2007) (quoting *Lee v. McCue,* 410 F. Supp. 2d 221, 226-27 (S.D.N.Y. 2006)).

As with a claim for intentional infliction of emotional distress, a claim for negligent infliction of emotional distress requires allegations of conduct "'so extreme in degree and outrageous in character as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community.'" *Blake v. Race*, 487 F. Supp. 2d 187, 219 (E.D.N.Y. 2007) (quoting *Wilson v. City of New York*, 294 A.D.2d 290, 295, 743 N.Y.S.2d 30, 34 (N.Y. App. Div. 1st Dep't 2002)). *See D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp.

2d 387, 400 (S.D.N.Y. 2007). Although physical injury is not an element of negligent infliction of emotional distress, "'a cause of action seeking such recovery must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety.'" *Blake*, 487 F. Supp. 2d at 219 (quoting *Lancellotti v. Howard*, 155 A.D.2d 588, 589-90, N.Y.S.2d 654, 655 (N.Y. App. Div. 2d Dep't 1989)). *See D'Angelo-Fenton*, 470 F. Supp. 2d at 400 (S.D.N.Y. 2007).

Accepting the allegations of the Complaint as true, and drawing all reasonable inferences in favor of the Plaintiff, the Plaintiff does not allege facts sufficient to show conduct so extreme or outrageous as to be regarded as "atrocious" or "utterly intolerable in a civilized community." Nor does the Plaintiff allege facts sufficient to show that the Defendants owed him a duty and breached that duty in a way that endangered his physical safety or caused him to fear for his physical safety.

As a consequence, the Court finds that the Plaintiff does not state a claim for negligent infliction of emotional distress.

For these reasons, and based on the entire record, the Court finds that the Plaintiff does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Accordingly, the Motion to Dismiss the Emotional Distress Claim is granted.

## Conclusion

For the reasons stated herein, and based on the entire record, the Motion to Dismiss is granted, and the Complaint is dismissed.[6]

---

[6] The Plaintiff has not requested leave to replead his claims, and the Defendants have not had an opportunity to make any arguments in opposition. As a result, the Court does not address this issue.

An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.

Dated: Brooklyn, New York
      September *4*, 2009

                                 ***S/Elizabeth S. Stong***
                                 ELIZABETH S. STONG
                                 UNITED STATES BANKRUPTCY JUDGE